NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PATRICIA MAYE REED,**

              **Plaintiff,**

**v.**                                                                                                  **Case No. 6:17-CV-279-ORL-22KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

             **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Patricia Maye Reed, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 7, 9, and the parties' Joint Memorandum,[1] Doc. No. 13.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.  Doc. No. 12.  Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

1

NOT FOR PUBLICATION

## **PROCEDURAL HISTORY.**

In 2013, Reed filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq*.  She alleged that she became disabled on August 31, 2010, but she later amended the disability onset date to August 31, 2011.  R. 36, 154.

After her application was denied originally and on reconsideration, Reed asked for a hearing before an Administrative Law Judge ("ALJ").  R. 105.  The ALJ held a hearing on November 10, 2015.  Reed, accompanied by an attorney, and vocational expert ("VE") testified at the hearing.  R. 34-66.

After considering the hearing testimony and the evidence in the record, the ALJ found that Reed was insured under OASDI through December 31, 2014.  The ALJ concluded that Reed had not engaged in substantial gainful activity since the alleged disability onset date.  R. 21.

The ALJ found that Reed had the following severe impairments:  degenerative disc disease of the lumbar and cervical spine; history of L1 burst compression fracture, status-post surgical repair; and a communited displaced left wrist fracture, status-post surgical repair.  R. 21.  The ALJ found that Reed had no diagnosed mental health impairment. The ALJ concluded that Reed's impairments, individually and in combination, did not meet or equal a listed impairment.  R. 22.

The ALJ determined that Reed had the residual functional capacity ("RFC") to perform light work

2

> except the claimant had a good ability to read, write, and use numbers. The claimant could lift up to 20 pounds occasionally and 10 pounds frequently. The claimant could stand [f]or up to six hours, walk for up to six hours, and sit for six hours in an eight hour day with normal breaks. The claimant was not limited in pushing and pulling, except for what is limited by the lifting and carrying weights described above. The claimant was unlimited in reaching but limited in handling and fingering on the left hand to only frequently. Grip with the right hand was 55 pounds and grip with the left hand was 25 pounds, assuming the person was left handed.

R. 22.   In making this determination, the ALJ gave little weight to the opinions of William P. Friedenberg, Ph.D., an examining psychologist, and Vinod K. Malik, M.D., a pain management physician who treated Reed after the date she was last insured.   R. 22, 25.

After considering the testimony of the VE, the ALJ concluded that Reed could return to her past relevant work as a personnel manager, which is a highly skilled, sedentary to light exertional job.   R. 27, 62.     Therefore, the ALJ found that Reed was not disabled. *Id.*

Reed now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Reed having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

3

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are somewhat adequately stated in the parties' Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts relevant to the issues raised to protect Reed's privacy to the extent possible.

Reed was born in 1955. R. 154. She completed school through the eleventh grade. R. 38. She previously worked as an assistant director of human resources. R. 39.[2]

Reed was injured in a fall on August 31, 2011. R. 40, 49. During the fall, she hit her head, resulting in memory loss. R. 51.[3] She underwent back surgery to fuse 3 discs and surgery on her left wrist. R. 49-50. At the time of the ALJ's hearing, Reed was taking hydrocodone for pain, which alleviated some of her pain for 2 to 3 hours. R. 49.

At the ALJ's hearing, Reed testified that, due to pain in her back, she could not bend or squat, and it took her longer to perform tasks such as getting dressed. She had difficulty performing repetitive tasks with her left wrist, including typing, and she had numbness in her left hand fingertips. R. 41, 48, 52. She also had memory loss resulting in forgetfulness. R. 41-42. She estimated that she could stand 20 to 30 minutes and sit 30 minutes at a time. She could walk slowly for about 1 hour. R. 42. She could not

---

[2] The record contains a detailed description of Reed's previous work. R. 230-38.
[3] Reed testified: "I did hit my head. They did do a test. They found a white spot on the x-ray, but they could not account for what it actually was. But, it was later deemed it was accountable to my memory loss." R. 51.

climb a flight of stairs.  R. 47.  She could lift up to 10 pounds.  R. 47.  During a typical day, she watched television, changing positions as necessary to alleviate pain in her lower to mid-back.  R. 45-46, 51.  She also played computer games for up to 30 minutes a day.  R. 46.  She could perform some household chores with difficulty.  R. 42-43.

Medical records confirm Reed's back and left wrist injuries and related surgeries. *E.g.*, R. 253, 257, 280, 288-92, 352-54.  After the surgeries, Reed participated in physical therapy.  *E.g.,* R. 303.

At or near the time of Reed's injuries, a CT of Reed's head showed "a nonspecific, subtle 3 mm area of attenuation in the left basal ganglia, etiology unclear."  Follow-up was recommended.  R. 298. A cervical spine CT showed degenerative disc disease prominently at C5-6.  R. 298.  A CT of the lumbar spine showed degenerative changes in the lumbar spine.  R 449.

On January 20, 2012, William B. Kuhn, M.D., noted that the previous spine surgery was healed but Reed complained of pain in her right flank and abdomen.  Dr. Kuhn referred her for a second opinion.  R. 344.

On January 25, 2012, Todd A. McCall, M.D., opined that the fracture of Reed's left wrist was healed.  R. 325.  Reed still needed to work on range of motion, and she was released to activities as tolerated.  R. 326.

On April 25, 2013, Reed reported to Gerald R. Woodard, D.O., at Shores Medical Center, that she had arthralgias/joint pain, back pain and wrist pain.  Upon examination, Dr. Woodard observed normal tone and motor strength without tenderness and normal

5

range of motion. He prescribed Lortab (hydrocodone with acetaminophen) for spinal stenosis of the thoracic region. R. 431.

On July 1, 2013, Dr. Friedenberg examined Reed at the request of the Division of Disability Determinations. Reed reported a memory deficit with related depression and anxiety. R. 401. Dr. Friedenberg observed that Reed's affect was mildly restricted. She was able to recall 3 of 5 items presented orally after a delay of 5 minutes. She could recall 4 digits forward and 3 backward. Dr. Friedenberg estimated that Reed's memory and concentration was mildly to moderately impaired, and her judgment was fair. The current diagnosis was to rule out an adjustment disorder and amnestic syndrome. He recommended further evaluation to determine the extent of any memory deficit. R. 402.

On July 8, 2013, Richard Willens, Psy.D., opined, after review of the records, that there were no mental medically determinable impairments established. R. 73 (Exhibit 2A).

On July 12, 2013, Sabrina Lichtward, a single decisionmaker ("SDM"), prepared a physical functional capacity assessment after review of Reed's records. SDM Lichtward opined that Reed could lift /carry up to 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk and sit about 6 hours in an 8-hour workday. She could engage in frequent handling/fingering in her left upper extremity. She should avoid concentrated exposure to hazards. R. 74-78 (Exhibit 2A).

On August 28, 2013, Val Bee, Psy.D., prepared a mental functional capacity assessment after review of the records. Dr. Bee opined that Reed had anxiety disorders which were not severe because they resulted in only mild limitations in activities of daily living and maintaining concentration, persistence or pace. R. 85-86 (Exhibit 4A).

On September 7, 2013, Gloria Hankins, M.D., prepared a physical functional capacity assessment after review of the records. Dr. Hankins opined that Reed could lift/carry 20 pounds occasionally and 10 pounds frequently. She could stand/walk and sit each a total of 6 hours in an 8-hour workday. She would be limited in handling and fingering in her left hand. R. 87-89 (Exhibit 4A).

In 2014, Reed continued treatment at Shores Medical Center. On February 3, 2014, she reported no back pain. Diagnoses included spinal stenosis of the thoracic region treated with Lortab. R. 411. On July 15, 2014, she reported muscle and joint pain but no back pain. Lortab continued to be prescribed. R. 405. On October 14, 2014, the treatment provider noted tenderness in Reed's left mid back. R. 530. On December 8, 2014, Reed again reported back pain at a level of 8 on a 10-point pain scale and left wrist pain. She was taking Tylenol No. 3 but requested increased pain medication. The provider agreed to give her a referral for pain management. R. 528.

Dr. Malik began treating Reed on February 10, 2015. Dr. Malik reviewed all of Reed's treatment records. R. 581. During the initial evaluation, Reed complained of pain in her lower back, moderate to severe, with back stiffness and spasms. R. 536. Upon examination, Dr. Malik observed moderate tenderness in the lumbar spine with

moderate limitation in range of motion. Dr. Malik observed that Reed's memory was apparently within normal limits, and he did not note any anxiety, depression or agitation. His diagnosis included lumbago/low back pain, spondylosis/lumbosacral, spinal stenosis/lumbar, and postlaminectomy syndrome, lumbar. He continued Reed on Lortab. R. 538.

Although Reed was initially reluctant to consider injections for pain management, *id.*, in May and June 2015 Dr. Malik administered facet injections at T12-L1. R. 540, 544. The June injection provided Reed 60% pain relief. Reed was also taking Tylenol with Codeine and Norco as well as Lortab. R. 540, 544. In July 2015, Reed stated that she was nervous about undergoing a Chemical Rhizotomy procedure despite continued back pain. R. 570-71.

In August 2015, Dr. Malik prepared a functional capacity assessment. R. 574-79. He opined that Reed could sit for 2 hours, stand for 1 hour and walk for 1 hour at a time without interruption. She could sit for a total of 20 minutes, stand for a total of 10 minutes and walk for a total of 10 minutes in an 8-hour work day. R. 575. She could occasionally lift up to 10 pounds. R. 574. She could occasionally reach, handle, finger and feel with both hands, but never push/pull with either hand. R. 576. She could occasionally climb stairs and ramps and balance, but never engage in other postural activities. R. 577. She could never work at unprotected heights, around moving mechanical parts, operate a motor vehicle or work in humidity and wetness. R. 578. She could be off task 25% or more of a typical workday due to symptoms likely to be

severe enough to interfere with attention and concentration needed to perform even simple work tasks.  *Id.*

During the hearing, the ALJ asked the VE to assume a hypothetical person with the RFC the ALJ determined applied to Reed.  R. 55-56.  The VE testified that this hypothetical person could perform Reed's past work as a personnel manager.  R. 56.  If the hypothetical person had the limitations identified by Dr. Malik, however, the VE testified that the person could not perform Reed's past relevant work or any job for which Reed had transferable skills.  R. 58-63.  If the hypothetical person had occasional limitations in the ability to concentrate, the VE testified that the person could not perform Reed's past relevant work.  R. 61-62.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Reed asserts three assignments of error.  She contends that the ALJ erred by giving little weight to the opinions of Dr. Friedenberg and Dr. Malik.  She also submits that the ALJ erred by finding her reports of functional limitations arising from pain to be not completely credible.  These are the only issues I will address.

*Dr. Malik.*

Dr. Malik is a treating physician who, the ALJ noted, first examined Reed "shortly after her date last insured[.]"  R. 24.  The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when (1) the

treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's medical records.  *Id.* at 1240-41.  The ALJ must articulate the reasons for giving less weight to the opinion of a treating physician.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ gave Dr. Malik's functional capacity assessment little weight.  He stated the following reasons for doing so:  (1) the evidence does not support any significant limitation in Reed's movement or level of pain and Reed was "treated solely with narcotic pain medication and there has been no request or attempt by providers to determine or treat any suspected underlying cause of pain, either nerve or musculoskeletal," (2) Dr. Malik's opinion was not supported by an orthopedist or the claimant's long time provider, and (3)  the reviewing physicians did not come to the same or similar conclusions.  R. 25.[4]

The first of these findings is not supported by the evidence.  Medical records from the Shores Medical Center contain evidence of tenderness in Reed's mid-back, and Reed reported pain at a level of 8 on a 10-point pain scale.  The treatment provider agreed to refer her for pain management.  Dr. Malik also observed moderate tenderness in the lumbar spine with moderate limitation in range of motion in February 2015.  In addition to

---

[4] Notably, the ALJ did not give Dr. Malik's opinion little weight because he treated Reed after the date she was last insured.  In his letter in the record, Dr. Malik made clear that he made his assessment regarding Reed's functional capacity during the period she was insured based on review of all of her medical records.

treating Reed with narcotic pain medication, Dr. Malik administered facet injections and discussed a Chemical Rhizotomy procedure with Reed.

As for the second of the findings, it is not evident who the ALJ referred to as Reed's long time provider. After she was discharged from care following her surgeries, she was treated by Dr. Woodard and physician's assistants at Shores Medical Center. The treatment notes from this facility document Reed's reports of pain, medication was adjusted to help with pain in her back, and a referral for pain management was made. Therefore, the medical records from Shores Medical Center provide some support for Dr. Malik's opinion.

As for the third finding, the ALJ stated that he relied on the opinions of "reviewing state Agency experts" contained in Exhibits 2A and 4A. R. 25, 27. The only physician who rendered a functional capacity assessment contained in these exhibits is Dr. Hankins. The ALJ is correct that Dr. Hankins opined that Reed would not be as limited as Dr. Malik indicated.[5] However, the opinion of a non-examining physician taken alone does not constitute substantial evidence to support an ALJ's decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990). Therefore, that the third factor alone is insufficient to state good cause for giving Dr. Malik's opinion little weight.

For these reasons, I recommend that the Court find that the ALJ erred by giving

---

[5] To the extent that the ALJ also relied on the opinion of SDM Lichtward, which is contained in Exhibit 2A, he erred. An SDM is not an acceptable medical source and, therefore, an ALJ may not rely on an SDM's opinion in determining disability. *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 872 (11th Cir. 2012)(unpublished opinions of the Eleventh Circuit are cited as persuasive authority).

NOT FOR PUBLICATION

little weight to the functional capacity assessment of Dr. Malik.

### *Dr. Friedenberg and Credibility*.

The last two assignments of error are intertwined. Reed contends that the ALJ erred by finding that she did not have functional limitations in memory and concentration. She specifically argues that Dr. Friedenberg found that her memory and concentration were mildly to moderately impaired after examining her and conducting psychological tests. She further contends that there is substantial evidence in the record of pain arising from her physical impairments to support her subjective complaints of deficits in memory and concentration.

The ALJ gave little weight to Dr. Friedenberg's opinion because he did not identify an underlying mental impairment to support his findings. However, Dr. Friedenberg's opinion does support the conclusion that Reed had memory and concentration issues from some source. Indeed, Dr. Friedenberg recommended that Reed undergo a further evaluation to determine the extent of her memory deficits, which further evaluation was not ordered by the SSA. Thus, while the ALJ did not err in giving little weight to Dr. Friedenberg's opinion based on functional limitations arising from a mental impairment, the ALJ should have considered Dr. Friedenberg's opinion as it related to deficits in memory and concentration as part of the record as a whole when determining Reed's credibility. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)(a credibility finding must be sufficient to enable a court to conclude that the ALJ considered the claimant's medical condition as a whole).

The ALJ's determination that Reed's reports of limitations in memory and concentration were not credible was based on two findings: (1) there was nothing in the objective findings to indicate any such limited memory or concentration; and, (2) Reed did not demonstrate any such deficits at the 2013 psychological consultative examination by Dr. Friedenberg.  R. 26.  As to the first factor, there is an objective finding by CT scan indicating that Reed had an abnormality in her brain, for which follow-up was recommended.  While there is no record of follow-up, Reed testified that she was told that the source of her memory impairment was this brain abnormality.  Similarly, Dr. Friedenberg expressly recommended that further evaluation be done to determine the source of Reed's memory deficits, which was not done.  Under these circumstances, a consultative examination regarding the source of Reed's memory deficits may have been warranted.

More importantly, the ALJ's second finding is incorrect.  Dr. Friedenberg found after examination and testing that Reed's memory and concentration were mildly to moderately impaired.  As discussed above, the ALJ should have considered those findings as part of the record as a whole in determining Reed's credibility regarding her reports of limitations in memory and concentration arising from pain.  Instead, he incorrectly wrote that no memory or concentration deficits were found during Dr. Friedenberg's evaluation.

For these reasons, I recommend that the Court find that the ALJ did not properly assess Reed's limitations in memory and concentration.

NOT FOR PUBLICATION

## RECOMMENDATION.

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further proceedings.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RESPECTFULLY RECOMMENDED** this 9th day of January 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE